11. Upon further investigation, Euronet discovered additional troubling information that further undercut the accuracy of the representations in the SPA. This information included the fact that, in direct contravention of the representations made to Euronet, La Nacional's General Sales Manager (Ramon Corporan) was a convicted felon, having been convicted of conspiracy to launder money and served more than four years in federal prison. *See* SPA at Section 2.13.2(iv); United *States of America v. Corporan, et. al.*, Case No. 96CR00919. The General Sales Manager is the upper management position responsible for the operations of La Nacional's sales force (*i.e.*, the individuals in the field responsible for those collecting funds). This a critical position in any money remittance business.

12. Euronet further discovered that La Nacional had engaged Defendant Roberto Lopez as a consultant, and that he was the former owner of Remesas America Oriental ("RAO"), the money remitter that employed Ramon Corporan at the time of his conviction for conspiracy to money launder, as a consultant. RAO was indicted and convicted, together with Ramon Corporan, for laundering $4.4 million to, among other places, the Dominican Republic. As a result of its federal conviction, RAO was subjected to a $2.2 million forfeiture judgment, in response to which Defendant Lopez, the La Nacional consultant, was required to surrender his shareholder interests in RAO in partial satisfaction -- effectively shutting down the money laundering enterprise.

13. In addition to engaging Defendant Lopez as a "consultant" and hiring Ramon Corporan as the General Sales Manager, Euronet discovered that La Nacional employs in its current upper management numerous others who were associated with the criminal RAO enterprise. These individuals also hold key positions within La Nacional:

4

EXHIBIT 1-B


- The President and Chief Executive Officer of La Nacional (Alan H. Friedman) served as the Executive Vice President and President of the parent company of RAO;

- La Nacional's Assistant to the President and Director of Branch Operations (Rosa M. Cruz) was similarly employed by the parent company of RAO;

- La Nacional's Corporate Internal Auditor (Frank Feliz) was similarly employed by the parent company of RAO;

- La Nacional's Director of Agent Operations (Frank R. Reyes) at La Nacional served in several roles at RAO and joined La Nacional following the conviction and closure of that money laundering enterprise; and

- The Controller of La Nacional (Ana Hernandez) served as the Controller for RAO.

14. Information regarding the connection to, and in essence re-creation of, the indicted and closed RAO enterprise within La Nacional's management structure was neither disclosed nor discovered until after the federal and state law enforcement agents raided the two La Nacional stores and arrested two La Nacional employees for money laundering. It is unknown how many other individuals associated with RAO are currently employed by or associated with La Nacional.

15. In addition to failing to disclose this information to Euronet, and representing falsely that no La Nacional employee or agent had been convicted of any money laundering offense or under investigation for any money laundering offense, La Nacional failed to advise its state regulators (in violation of certain state laws) that it employed a convicted felon. Because of this violation, La Nacional is subject to disciplinary action, including debarment, by certain state regulatory agencies.

16. In addition to these knowingly false misrepresentations, which fraudulently induced Euronet to enter into the SPA, Euronet subsequently learned that certain of the Respondents, in particular Defendant Jose Hernandez and Roberto Lopez, were

5

conspiring to strip agents and sales associates (*i.e.*, the companies' revenue-generating relationships) from La Nacional post-closing to another entity for their personal gain. The business-stripping conspiracy materially and substantially alters the value of La Nacional and undermined the goodwill and working relationship that La Nacional had with existing sales associates and agents.

17.     Accordingly, on April 5, 2007, Euronet rescinded the SPA and terminated the SPA pursuant to its terms. A true and accurate copy of the April 5, 2007 correspondence is attached as Exhibit 7 to the Amended Petition.

18.     In response to the Amended Petition, on April 30, 2007, Respondents issued a demand for arbitration pursuant to CPLR 7503(c), relying on the arbitration provision set forth in the SPA at Section 11.4 (although Respondent Roberto Lopez is not a signatory). A true and accurate copy of the April 30, 2007 correspondence is attached as Exhibit B. The demand for arbitration was served upon Petitioner by facsimile on April 30, 2007 and by certified mail.

19.     Pursuant to CPLR §§ 7502(a) and 7503(b), Petitioner Euronet requests the Court to stay the arbitration demanded by Respondents as the entire SPA was obtained through fraud and is therefore invalid. Twenty days have not elapsed since the date of service of the demand for arbitration.

20.     On May 17, 2007, Euronet filed a Motion to Stay Arbitration in the District Court of Kansas. A true and accurate copy of that motion and memorandum in support is attached hereto as Exhibit C and is incorporated herein by reference.

21.     As this matter was initially filed in Kansas and that matter is currently a "pending matter" before the District Court of Kansas wherein the arbitrability of this dispute can be determined, Euronet respectfully requests this Court defer ruling on this

Petition and allow the issue of arbitrability to be determined on Euronet's pending motion. See CPLR § 7502(a).

22. Should this Court be disinclined to defer a ruling on this Petition pending resolution of the motion pending in the District Court of Kansas, Euronet requests this Court stay the arbitration demanded by Respondents as the SPA and the related arbitration clause is permeated by fraud.

23. Should this Court be disinclined to defer a ruling on this Petition pending resolution of the motion pending in the District Court of Kansas, Euronet respectfully requests the Court to 1) allow a period of ninety (90) days within which to conduct discovery related to the issue of arbitrability, due to the international scope of the necessary discovery, and 2) following the completion of arbitrability-related discovery, to conduct an evidentiary hearing on the issue of arbitrability and whether fraud so permeates the entire agreement that it invalidates the arbitration clause contained within the SPA.

WHEREFORE, Petitioner Euronet requests that judgment be entered:

1. Purusant to CPLR 7503(b), staying all proceedings under the Demand for Arbitration;
2. Granting Euronet leave to conduct discovery in support of this Petition to Stay Arbitration and to conduct an evidentiary hearing on the issue of arbitrability. Euronet requests a period of ninety (90) days within which to conduct discovery related to arbitrability;
3. Awarding Euronet its costs and expenses in making this application; and
4. Awarding Euronet such other and further relief as this Court deems just and proper.

7

*[signature]*

Howard J.C. Nicols, Esq. (3895554)
SQUIRE, SANDERS & DEMPSEY LLP
350 Park Avenue
New York, NY 10022

Of Counsel:

Thomas S. Kilbane (OH # 0005938)
Colin R. Jennings (OH # 0068704)
SQUIRE, SANDERS & DEMPSEY L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8795

Attorneys for Petitioner

DATED: May 17, 2007

8