is no federal policy favoring arbitration under a certain set of procedural rules." *Id.* at 477. The Supreme Court recognized that the FAA contains no express pre-emptive provision, "nor does it reflect a congressional intent to occupy the entire field of arbitration." *Id.* The Court further found that the California rules were "manifestly designed to encourage resort to the arbitral process," and even if they did not serve that goal in the case at hand, the Court ruled that parties to a contract have the authority to "specify . . . the rules under which [their] arbitration will be conducted." *Id.* at 479. Thus, the Court held that, in the absence of any express conflict between the provisions of the FAA and a state's arbitration laws, the FAA will be found to preempt state arbitration law *only* to the extent that the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 477.

2. **The New York law providing that questions of arbitrability be tried to the Court, not to arbitration, does not undermine the policies supporting the FAA.**

The highest court of New York adopted *Volt* in *Smith Barney, Harris Upham & Co., Inc. v. Luckie*, 85 N.Y.2d 193, 206 (1995), observing that there was no significant distinction to be drawn between the policies supporting the FAA and the arbitration provisions under New York statutory law. *Id.* at 205-206 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, n.13. (1967)) Relying on *Volt*, the New York Court of Appeals held that the New York statutory rule under CPLR 7502 permitting the courts, not the arbitrators, to address threshold issues to arbitrability, such as statute of limitations defenses, did not constrain the pro-arbitration policies underlying the FAA. *Id.* at 206. The court reasoned that honoring the parties' selection of New York law to

12

EXHIBIT 1-F

govern their agreement advances the federal policy enunciated in *Volt* of ensuring the enforceability of private agreements to arbitrate. *Id.*

### 3. New York law holds that a court, not an arbitrator, must initially decide whether the alleged fraud "permeated the entire contract."

Under New York law, if the arbitration clause was induced by fraud, the matter is no longer arbitrable and the court decides the dispute. *See In re Weinrott (Carp)*, 322 N.Y.2d. 190 (1973). Furthermore, under New York law, where the fraud is part of a grand scheme that "permeated the entire contract," the invalidity of the agreement as a whole is demonstrated and the matter is not arbitrable. *Silverman v. Benmor Coats, Inc.*, 61 N.Y.2d 299, 307 (1984) (citing *In re Weinrott (Carp)*, 32 N.Y.2d 190 (1973)); *see also Kennelly v. Mobius Realty Holdings LLC*, 33 A.D.3d 380, 383 (1st Dept. 2006) (finding an evidentiary hearing was necessary because there was an issue present regarding whether the agreement was permeated with fraud, such that the arbitration clause would fall with the rest of the agreement); *O'Neill v. Krebs Communications Corp.*, 16 A.D.3d 144, 144-45 (1st Dept. 2005) (applying the exception that fraud "permeates the entire agreement so as to invalidate the arbitration clause as well"); *Stellmack Air Conditioning & Refrigeration Corp. v. Contractors Mgmt. Sys. of NH, Inc.*, 293 A.D.2d 956, 957 (3rd Dept. 2002) (applying the "fraud was part of a grand scheme that permeated the entire contract" exception); *In re Teleserve Systems, Inc.*, 230 A.D.2d 585, 592 (4th Dept. 1997) (acknowledging that New York law establishes two exceptions wherein a court decides whether a contract should be revoked due to fraud or a similar defense: where the challenge is to the making of the arbitration clause itself, or where the alleged fraud permeates the contract as a whole); *Avalon Inter. Trading Corp. v. Receivables Mgmt. Corp.*, 220 A.D.2d 248, 249 (1st Dept. 1995) (applying the "fraud permeates" exception); *Cologne Reinsurance Co. v. Southern*

13

*Underwriters, Inc.*, 218 A.D.2d 680, 680 (2nd Dept. 1995) (applying the "alleged fraud was part of a grand scheme that permeated the entire contract" exception); *Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 798-99 (2nd Dept. 1985) (finding it was error for the lower court not to hold an evidentiary hearing to resolve the dispute of "whether the alleged fraud was part of a grand scheme that permeated the entire contract"); *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972) (finding that, after a sufficient prima facie showing of an issue as to whether there is a valid agreement to arbitrate, "a hearing is required to afford the parties an opportunity to present evidence and to examine and cross-examine witnesses").

### B. **Euronet is entitled to an evidentiary hearing to show that, under New York law, Respondnets' fraud so "permeated" the entire SPA that the arbitration clause is unenforceable.**

It is well settled under New York law that, on an application to stay arbitration pursuant to CPLR § 7503(b), a trial or evidentiary hearing is required if there is any disputed issue of fact. *Burbank Broad. Co. v. Roslin Radio Sales, Inc.*, 99 A.D.2d 976, 977 (1st Dept. 1984); *see also M.I.F. Sec. Co. v. R.C. Stamm & Co.*, 94 A.D.2d 211, 213 (1st Dept. 1983) ("[I]t is a judicial responsibility, and not the arbitrator's, to decide the threshold question of whether the parties are bound by a valid agreement to arbitrate."). Under CPLR § 7503, the question of "whether a valid arbitration agreement was made or complied with" is for the courts to decide. CPLR §7503(a). If an issue claimed to be arbitrable is involved in a pending action, the court in the pending action must decide all issues of arbitrability. *Id.* As such, this Court must decide the threshold question of whether a valid arbitration agreement exists here.

Moreover, where an allegation of fraud in the inducement of the contract raises a "substantial question as to the existence of a valid agreement to arbitrate which …

14

would warrant a stay of arbitration ..., a hearing is required at which the parties are to be afforded the opportunity to present evidence and examine and cross-examine witnesses." *Barrett Intercommunication Prods. Corp. v. Entron, Inc.*, 41 A.D.2d 567, 567 (2nd Dept. 1973) (citing *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972)). Accordingly, an evidentiary hearing is required to resolve a dispute as to whether the alleged fraud "permeates the entire agreement" so as to make the arbitration agreement invalid. *See Kennelly v. Mobius Realty Holdings LLC*, 33 A.D.3d 380, 383 (1st Dept. 2006); *Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 799 (2nd Dept. 1985); *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972).

A New York appellate court recently found that an evidentiary hearing was required to determine if the agreement "was permeated with fraud, such that the arbitration clause would fall with the rest of the agreement." *Kennelly*, 33 A.D.3d at 380. In *Kennelly*, the plaintiff seeking to avoid arbitration alleged that a brokerage agreement between himself and a real estate brokerage firm was the product of fraud. *Id.* at 381. The court found that plaintiff raised threshold issues regarding the validity of the agreement that were for the court to determine. *Id.* at 382. The court emphasized that "it is a judicial responsibility, and not the arbitrator's, to decide the threshold question of whether the parties are bound by a valid agreement to arbitrate." *Id.* (quoting *M.I.F. Sec. Co. v. R.C. Stamm & Co.*, 94 A.D.2d 211, 213 (1st Dept. 1983)).

Similarly, in *Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 799 (2nd Dept. 1985), the appellate court found error where the lower court failed to hold an evidentiary hearing to determine if fraud permeated the agreement. The plaintiffs, who sought to avoid arbitration, were partners in a nursing home facility and had entered into an agreement with a service organization to supply health-care services to the facility. The

15

plaintiffs alleged that the contract resulted from premeditated fraud orchestrated between the service organization and the nursing home's controller, who they claimed had an interest in the respondent company. *Id*. The record contained testimony of the service organization's president, that the agreement was a "front for the union and for the State agency." *Id*.[3] The New York appellate court found the record established the existence of disputed factual issues that could not be resolved absent an evidentiary hearing. *Id*.

In *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972), the court found that allegations of fraudulent inducement against an attorney sufficiently raised triable issues as to whether the fraud permeated the entire agreement. In *Lourie*, the plaintiffs seeking to avoid arbitration alleged that they were induced to enter into an agreement to terminate a partnership by their attorney-partner, who fraudulently represented that such an agreement was the only way to terminate the partnership, and that failure to execute the agreement would result in continuation of the partnership. *Id*. at 282. Pursuant to these allegations, the court found that there was a material issue of fact regarding whether the agreement was a product of "arm's length" negotiations, thereby casting doubt on whether the parties intended to settle their disputes by arbitration. *Id*. at 285.

---

[3] Such record testimony, despite the absence of an evidentiary hearing, demonstrates

16