THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| EURONET PAYMENTS & REMITTANCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-2216 |
| | ) | |
| v. | ) | |
| | ) | |
| ENVIOS DE VALORES LA NACIONAL CORP., | ) | |
| ENVIOS DE VALORES LA NACIONAL, INC., | ) | |
| AEROCARIBE TRAVEL AGENCY, INC., | ) | |
| JOSE ANDRES HERNANDEZ ANDUJAR, | ) | |
| CANDIDA DE HERNANDEZ, AND | ) | |
| ROBERTO LOPEZ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

**EURONET'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR STAY TO ENFORCE ARBITRATION PROVISION**
_____

## I. Introduction

Defendants' motion for stay to enforce the arbitration provision focuses on the arbitrability of Euronet's tort claims against the signatories to the Stock Purchase Agreement ("SPA"). That focus is misplaced. Under New York law, which all the parties acknowledge is controlling, the threshold issue before the Court is whether Defendant's conduct invalidates the arbitration agreement, which has been rescinded by Euronet due to Defendants' fraud. Euronet Payments & Remittance, Inc. ("Euronet") is entitled to conduct both discovery and an evidentiary hearing to demonstrate that Defendants' fraud so permeated the SPA that the

agreement and its arbitration clause are unenforceable.  Moreover, as a non-party to the SPA, Roberto Lopez cannot compel arbitration of Euronet's claims against him.[1]

Accordingly, Defendants' Motion should be denied (or at a minimum stayed until resolution of Euronet's earlier filed Motion to Stay the Arbitration), and this Court should provide Euronet the opportunity to conduct fraud-related discovery in support of the evidentiary hearing that will demonstrate the invalidity of the relied on arbitration provision.  A motion for leave to conduct discovery prior to the Case Management Conference is pending before the Court (Docket Entry No. 9).

## II.  Argument

### A.    Euronet has made a prima facie showing that Defendants' fraud "permeated the entire contract," requiring discovery and an evidentiary hearing on the validity of the arbitration provision.

As explained fully in Euronet's earlier filed Motion to Stay the Arbitration (Docket Entry Nos. 5 and 6), which briefing is incorporated herein by reference, the facts and allegations in the Amended Petition demonstrate that the Defendants intentionally lied in order to induce Euronet to agree to the terms of the SPA, with the full intention of stripping away La Nacional's future business and value after the transaction closed.    Defendants bargained with the bad-faith objective of defrauding Euronet.  Defendants' fraudulent scheme was so pervasive that fraud permeated the entire SPA, rendering every provision of the Agreement, including the arbitration clause, unenforceable.  The bad-faith intent of the Defendants and the extensive nature of their fraud demonstrates that the SPA was not a result of an "arm's length" negotiation.

---

[1] Defendant Lopez has waived any Civil Rule 12(b) defense as to lack of personal service by his active participation in this matter (*e.g.*, giving notice of intent to require arbitration in the April 30, 2007 notice and joining in Defendants' Motion).  If it is decided that Lopez has not waived his defense of lack of personal service, the arguments made on his behalf should be disregarded by this Court.  He cannot agree only to be bound to a decision by the Court that he finds acceptable.

2

Under New York law, where fraud "permeate[s] the entire contract," the invalidity of the agreement as a whole is demonstrated and the arbitration provision is unenforceable. *Silverman v. Benmor Coats, Inc.*, 61 N.Y.2d 299, 307 (1984) (citing *In re Weinrott* (*Carp*), 32 N.Y.2d 190 (1973))[2]. And, where, as here, an allegation of fraud raises a "substantial question as to the existence of a valid agreement to arbitrate which. . . would warrant a stay of arbitration. . ., a hearing is required at which the parties are to be afforded the opportunity to present evidence and examine and cross-examine witnesses." *Barrett Intercommunication Prods. Corp. v. Entron, Inc.*, 41 A.D.2d 567 (2nd Dept. 1973) (citing *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972)). Accordingly, discovery and an evidentiary hearing are required under New York law to address whether the alleged fraud "permeates the entire agreement" so as to make the arbitration agreement invalid. *See Kennelly v. Mobius Realty Holdings LLC*, 33 A.D.3d 380, 383 (1st Dept. 2006); *Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 799 (2nd Dept. 1985); *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972).

---

[2] New York law is replete with case law applying the "fraud permeates the agreement" rule. *See Kennelly v. Mobius Realty Holdings LLC*, 33 A.D.3d 380, 383 (1st Dept. 2006) (finding an evidentiary hearing was necessary because there was an issue present regarding whether the agreement was permeated with fraud, such that the arbitration clause would fall with the rest of the agreement); *O'Neill v. Krebs Communications Corp.*, 16 A.D.3d 144, 144-45 (1st Dept. 2005) (applying the exception that fraud "permeates the entire agreement so as to invalidate the arbitration clause as well"); *Stellmack Air Conditioning & Refrigeration Corp. v. Contractors Mgmt. Sys. of NH, Inc.*, 293 A.D.2d 956, 957 (3rd Dept. 2002) (applying the "fraud was part of a grand scheme that permeated the entire contract" exception); *In re Teleserve Systems, Inc.*, 230 A.D.2d 585, 592 (4th Dept. 1997) (acknowledging that New York law establishes two exceptions wherein a court decides whether a contract should be revoked due to fraud or a similar defense:  where the challenge is to the making of the arbitration clause itself, or where the alleged fraud permeates the contract as a whole); *Avalon Inter. Trading Corp. v. Receivables Mgmt. Corp.*, 220 A.D.2d 248, 249 (1st Dept. 1995) (applying the "fraud permeates" exception); *Cologne Reinsurance Co. v. Southern Underwriters, Inc.*, 218 A.D.2d 680 (2nd Dept. 1995) (applying the "alleged fraud was part of a grand scheme that permeated the entire contract" exception); *Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 798-99 (2nd Dept. 1985) (finding it was error for the lower court not to hold an evidentiary hearing to resolve the dispute of "whether the alleged fraud was part of a grand scheme that permeated the entire contract"); *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972) (finding that, after a sufficient prima facie showing of an issue as to whether there is a valid agreement to arbitrate, "a hearing is required to afford the parties an opportunity to present evidence and to examine and cross-examine witnesses").

3

Accordingly, Defendants' Motion should be denied (or at a minimum stayed until resolution of Euronet's Motion to Stay the Arbitration) so that the discovery and evidentiary hearing Euronet is entitled to under New York law can proceed.

**B.    Defendant Lopez's active participation in this matter constitutes an implicit waiver of any Civil Rule 12(b) defense for lack of personal service.**

Defendants simultaneously argue that the Court does not have jurisdiction over Defendant Lopez while demanding the Court compel arbitration on the raw assertion that Lopez would simply abide by that order. This self-serving contention ("I will agree only to be bound by a decision I like") reflects the inappropriateness of Defendant's position.

For months, Lopez has avoided Euronet's efforts to serve him with the Amended Petition in the Dominican Republic. Euronet has had a process server attempt to serve Defendant Lopez at his place of employment (waiting in the lobby for entire days to no avail due to Defendant Lopez's refusal to meet with the process server) and at his home (where the person answering the door advised that Defendant Lopez no longer lives there and there is no forwarding address). However, where it benefits him, Lopez has affirmatively participated in this action (*i.e.*, giving notice of intent to arbitrate and arguing the merits as to the issue of arbitrability).

Fair play and justice will not permit Lopez to avoid the consequences of his misconduct by purposely avoiding service while simultaneously using the mechanisms of this Court to his benefit. By affirmatively seeking to compel arbitration in the April 30, 2007 notice, Defendant Lopez has made an appearance in this matter, waiving any Rule 12(b) defense as to lack of personal jurisdiction. *See Cactus Pipe & Supply Co., Inc. v. M/V Montmartre*, 756 F.2d 1103, 1108 (5th Cir. 1985) (holding, for purposes of determining waiver of 12(b) defenses as to lack of service, an appearance may arise by implication "from a defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to the plaintiff other

4

than one contesting only the jurisdiction or by reason of some act or proceedings recognizing the case as in court"); s*ee also Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732-33 (7th Cir. 1991) (finding Rule 12(h)(1) defenses "may be waived by formal submission in a cause, or by submission through conduct"); *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 996-97 (1st Cir. 1983) (same).  As a result of his active participation in this matter, Euronet should be permitted to prosecute its claims against Roberto Lopez.

### C.   Euronet's claims against Lopez are not arbitrable and should be litigated in this Court.

In any event, Roberto Lopez is not a party to the SPA and the claims against him are therefore not subject to the arbitration provision.  The policy favoring arbitration does not extend to situations where a determination must be made as to whether a party is bound by or can enforce the arbitration provision (*i.e.* whether a non-party can enforce an arbitration clause). *See McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994) ("The federal policy [favoring arbitration], however, does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear."). Instead, "ordinary contract principles determine who is bound." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *Daisy Mfg. Co. Inc. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir. 1994))[3].

The contractual right to compel arbitration may only be invoked by a party to the agreement.  *Waldron v. Goddess*, 93 A.D.2d 706, 709 (1st Dept. 1983) (reversed on other grounds) (quoting *Moruzzi v. Dynamics Corp. of Amer.*, 443 F.Supp 332 (S.D. N.Y. 1977)); *see also Lorber Industries of Cal. v. Los Angeles Printworks Corp.*, 803 F.2d 523, 525 (9th Cir.

---

[3] "The federal policy favoring arbitration does not extend to a determination of who is bound because, as stated by the Supreme Court, the purpose of the Federal Arbitration Act is 'to make arbitration agreements as enforceable as other contracts, but not more so.'" *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1074 (5th Cir. 2002) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)).

DB03/800667.0043/7676120.1

1986).  Lopez is a non-party to the SPA, and therefore does not have a contractual right to compel arbitration.

Defendants contend that Euronet's claims against Lopez are "inextricably intertwined" with the SPA, and therefore Euronet is estopped from avoiding arbitration of these claims.  As a threshold matter, due to the pervasive nature of the underlying fraud, the relied on arbitration agreement is invalid and all of the claims asserted in this action are not subject to arbitration.

Defendant Lopez, a non-party to the agreement, is attempting to compel arbitration of the tort claims asserted against him personally - - despite the fact that he has no rights whatsoever under the SPA.  "[T]he situation when a party seeks to compel a nonparty to arbitration differs from a situation where a nonparty is seeking to compel a party."  *Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530, 1535 (M.D. Ala. 1997).  In the former instance, the party already has rights under the arbitration clause and is seeking to enforce them more broadly, so if the dispute is "reasonably related" arbitration can be required.  In the latter, much more is required.  "[T]he nonparty must first, as a threshold, establish grounds, in law or equity, why it should be permitted to assert rights under a contract to which it is NOT a party" and then must further demonstrate that the dispute is "inextricably intertwined" with the contract.  *Id.*

 The "inextricably intertwined" exception is an extremely narrow exception to the general rule that a contract does not grant enforceable rights to non-signatories. *See Francisco v. Stolt-Nielson*, CIVIL ACTION NO. 02-2231 SECTION: "R" (5), 2002 U.S. Dist. LEXIS 23134, at *15 (E.D. La. Dec. 2, 2002) ("The general rule is that only signatories to an arbitration agreement may invoke the arbitration clause.").  In assessing the very narrow scope of this exception, New York courts hold that "interrelatedness [to the underlying contract], standing alone, is not enough ...." *TNS Holdings, Inc. v. MKI Securities Corp.*, 92 N.Y.2d at 340.  This is

consistent with federal law holding that claims against a non-signatory to a contract are not arbitrable absent a strong showing by the non-signatory that the claims against the non-signatory are "intimately founded in and intertwined with" the underlying contract. *See Sunkist Soft Drinks, Inc. v. Sunkist Growers*, 10 F.3d 753, 758 (11th Cir. 1993) (quoting *McBro Planning & Dev. Co. v. Triangle Electric Constr. Co.*, 741 F.2d 342, 344 (7th Cir. 1984)); *see also Thompson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 779 (2nd Cir. 1995).

Euronet's claims against Defendant Lopez are not "intimately founded in and intertwined with" the SPA.  The claims asserted against him personally are based in tort, not contract. Euronet does not have to rely upon the terms of the SPA to prove these claims.  Instead, these are extra-contractual torts, which exist independent from the SPA, resulting in separate liability.[4] Therefore, Euronet's claims against Lopez, a nonsignatory to the SPA, are not arbitrable and should be litigated in this Court.

## IV.  Conclusion

Based upon the foregoing, Defendants' Motion should be denied because fraud permeates the entire SPA and this matter should remain pending before this Court.  Alternatively, Defendants' Motion should be stayed pending completion of discovery and the evidentiary hearing on the issue of whether fraud so permeates the SPA as to invalidate the arbitration provision.  Finally, Euronet respectfully submits that the Court should enter an order holding Defendant Lopez has waived, through his active participation in this matter, any Civil Rule 12(b)

---

[4] To the extent that Defendants argue that Euronet's claims against Lopez are arbitrable because they would not exist but for the SPA, such a contention fails under the law.  Pursuant to the law regarding the narrow "inextricably intertwined" exception to the general rule that non-signatories cannot enforce the terms of the contract, "interrelatedness, standing alone, is not enough." *TNS Holdings, Inc.*, at 340. Indeed, Lopez must show that Euronet's claims against him are "intimately founded in and intertwined with" the SPA. *Sunkist Soft Drinks, Inc. v. Sunkist Growers*, 10 F.3d 753, 758 (11th Cir. 1993).

defense as to lack of service, and Euronet can prosecute its claims against him in this Court because he cannot avail himself of the invalided arbitration provision.

Respectfully submitted,


 _/s/ George F. Verschelden_____
William M. Modrcin  KS #13020
George F. Verschelden  KS #21469
Stinson Morrison Hecker LLP
1201 Walnut Street
Kansas City, Missouri 64106
(816) 842-8600
FAX (816) 691-3495


Thomas S. Kilbane (OH # 0005938 – *pro hac vice*)
Howard J.C. Nicols (OH # 0007493 – *pro hac vice*)
Colin R. Jennings (OH # 0068704 – *pro hac vice*)
SQUIRE, SANDERS & DEMPSEY L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8795


Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

A copy of the foregoing Plaintiff's Response to Defendants' Motion for Stay to Enforce Arbitration Provision was filed electronically on this 11th day of June, 2007.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


_/s/ George F. Verschelden_____
One of the Attorneys for Plaintiff

DB03/800667.0043/7676120.1