IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EURONET PAYMENTS & REMITTANCE, INC., | ) ) ) |
| Plaintiff, | ) ) ) Civil Action No. 07-2216 |
| v. | ) ) |
| ENVIOS DE VALORES LA NACIONAL CORP., ENVIOS DE VALORES LA NACIONAL, INC., AEROCARIBE TRAVEL AGENCY, INC., JOSÉ ANDRES HERNÁNDEZ ANDUJAR, CANDIDA DE HERNÁNDEZ AND ROBERTO LÓPEZ, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' REPLY TO EURONET'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY TO ENFORCE ARBITRATION PROVISION**

Euronet's claim that it has made a prima facie showing of fraud such that it is entitled to an evidentiary hearing is misguided and conflicts with controlling law. Euronet's position is contrary to well-established precedent favoring arbitration. Indeed, if Euronet's arguments are accepted, a party need only make unsubstantiated, conclusory fraud allegations to attack a valid arbitration provision and delay resolution of the matter for months. As explained more fully in Defendants' Response in Opposition to Euronet's Motion to Stay Arbitration and Motion to Conduct Discovery Prior to the Rule 26(f) Conference, Euronet's claims do not even meet Federal Rule of Civil Procedure 9(b)'s requirement that fraud be plead with particularity, let alone the "clear and convincing" standard imposed by New York law. Further, and more importantly, New York law does not determine whether Euronet is entitled to an evidentiary hearing. Both the FAA and the terms of the SPA, which are controlling, provide that the issue of

2083921.1

the validity of the arbitration clause, even in the light of the fraud allegations made by Euronet, is reserved for the arbitrator.

Neither is Euronet correct in its assertion that only a party to an agreement with an arbitration clause may compel arbitration. As Euronet recognizes, "ordinary contract principles determine who is bound." Euronet's Opp. Brief at p. 5. In the instant action, the SPA's arbitration clause is broad enough to include the claims made against Mr. López. Euronet has claimed that Mr. López was acting as an agent for Mr. Hernández, and Euronet's allegations against Mr. López are inextricably intertwined with the claims made against the other Defendants. Indeed, Euronet's claims against Mr. López are subject to arbitration because they rely upon and are based upon the SPA, and failure to require arbitration of those claims would thwart the parties' intent that all disputes concerning the SPA be subject to arbitration.

## ARGUMENT AND CITATION OF AUTHORITY

### I. The Issue Of The Validity Of The Arbitration Clause Is Reserved For the Arbitrator.

Citing New York law, Euronet claims that fraud so permeates the SPA that it is entitled to an evidentiary hearing on the validity of the arbitration clause. This is wrong for at least two reasons. First, Euronet fails to acknowledge that under New York law it would have to make a prima facie showing of fraud by "**clear and convincing**" evidence in order for the Court to consider whether to give it an evidentiary hearing. This Euronet has failed to do. Its conclusory allegations do not even satisfy Federal Rule of Civil Procedure 9(b), let alone establish a prima facie showing of fraud by clear and convincing evidence. Moreover, even if Euornet *could* make such a showing, the FAA and the SPA would still require that Euronet's claims that alleged fraud invalidates the SPA, including its arbitration provision, be reserved for the arbitrator.

### A. Euronet Has Not Made a Prima Facie Showing of Fraud By Clear and Convincing Evidence.

When an arbitration clause covers claims of fraud, as in the instant action, a party attempting to circumvent arbitration has the burden to present "clear and convincing proof of permeation with fraud (in the agreement) such as would invalidate the entire agreement." Shmulevich v. Bederoff, No. 23188/04, 2007 WL 474266, N.Y. Slip Op. 50226U, *4, (N.Y. Sup. Feb. 13, 2007) (emphasis supplied). "[B]are conclusory assertions [are] insufficient to demonstrate that 'the alleged fraud was part of a grand scheme that permeated the entire contract including the arbitration provision.'" Stellmack Air Conditioning & Refrigeration Corp. v. Contractors Mgmt Sys. of NH, Inc., 293 A.D.2d 956, 956-57 (3d Dept. 2002) (rejecting plaintiff's bare assertions that numerous flawed operations in licensed software established fraud that permeated entire licensing agreement when contract contained a broad arbitration clause); Pinson v. Pinson, 2006 N.Y. Slip Op. 51685U at *8, 824 N.Y.S.2d 758 (2006) (rejecting plaintiff's allegations of fraudulent inducement when plaintiff admitted he signed the arbitration agreement, but failed to offer any evidence other than "self-suffering, conclusory allegations"). In the absence of facts demonstrating clear and convincing proof that a contract was permeated by fraud, the question of fraudulent inducement is reserved for the arbitrator. See Avalon Int'l Trading Corp. v. GST Receivables Mgmt Corp., 220 A.D.2d 248, 249 632 N.Y.S.2d 95 (1st Dept. 1995) (staying action pending completion of arbitration).

Euronet's fraud allegations are nothing more than "bare conclusory assertions." Federal Rule of Civil Procedure "Rule 9(b) requires the party claiming fraud to set forth 'the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" Ramada Franchise Sys., Inc. v. Tresprop, Ltd., 188 F.R.D. 610, 616 (D. Kan. 1999). Furthermore, when fraud is alleged against multiple defendants, the party

alleging fraud must separately set forth the acts of alleged fraud by each defendant to satisfy Rule 9(b)'s pleading requirements.  See Regal Ware, Inc. v. Vita Craft Corp., No. 06-2161-JWL, 2006 U.S. Dist. LEXIS 68104, *17-18 (D. Kan. Sept. 19, 2006) (By failing to "identify the particular individual or individuals [defendants] who made the misrepresentations," and by failing to allege specific dates or locations where the alleged misrepresentations were made, the plaintiff did not sufficiently plead fraud with particularity under Rule 9(b)).  This Euronet has failed to do.  Fraud allegations that do not even satisfy Federal Rule of Evidence 9(b) can hardly be sufficient to establish a prima facie showing of fraud by clear and convincing evidence.

> **B.    Under the FAA and SPA, The Fraud Issues Raised By Euronet Are Reserved For The Arbitrator**
>
>> **1.    The FAA Requires Arbitration Of Euronet's Fraud In The Inducement Claims.**

When, as here, a contract is subject to the Federal Arbitration Act and has a New York choice of law provision, unless the contract specifies that the "agreement *and its enforcement*" will be governed by New York law, it is the arbitrator and not a court which decides defenses to arbitrability.  Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp., 826 N.E.2d 802, 806 (N.Y. 2005).  The SPA does not specify that "its enforcement" will be governed by New York law.  Without such language, the FAA determines who decides threshold issues of arbitrability.  Diamond Waterproofing Systems, Inc., 826 N.E.2d at 805 (2005); see also Nomura Securities Int'l, Inc. v. CIBC World Markets Corp., 798 N.Y.S.2d 879, 884 (2005) ("Given the parties' decision to arbitrate any controversy arising out of their business relationship . . . and the absence of an express choice-of-law provision that New York law governs the enforcement of the agreement to arbitrate, petitioner has failed to overcome the presumption that the arbitrator is to determine the timeliness issues.").

Under the FAA, it is well settled that alleged fraud in the inducement in the making of a contract – unless the fraud goes to the agreement to arbitrate itself – is an issue for the arbitrator and not a court.  Bar-Ayal v. Time Warner Cable, Inc., No. 03CV9905KMW, 2006 WL 2990032, * 6 (S.D.N.Y. Oct. 16, 2006) ("[W]here a party challenges the *validity of a contract* (that includes an arbitration provision) *as a whole* [and listing fraud in the inducement as a challenge to a contract's validity]– rather than the validity of the arbitrator provision itself, or a separate arbitration agreement – the arbitrator must decide that issue." [Citations Omitted.] (emphasis in original)).

### 2.     The SPA Itself Reserves Issues Of Arbitrability For The Arbitrator.

The SPA's arbitration clause incorporates the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association (the "AAA").  Under the AAA's rules, the validity of an arbitration clause as well as the validity of the contract as a whole are reserved to the arbitrator.  AAA, Commercial Arbitration Rules, R-7 (Jurisdiction).  Therefore, in executing the SPA, Euronet agreed that an arbitrator would have the jurisdiction to rule on the validity of the SPA, including the jurisdiction to rule on the type of fraud claims that Euronet now asserts.  Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (holding that an arbitration clause which provided that arbitration would be held "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" was "clear and unmistakable evidence of the parties' intent to delegate ["objections with respect to the existence, scope or validity of the arbitration agreement"] to an arbitrator").

**II.     Euronet's Claims Against Roberto López Must Also Be Submitted to Arbitration.**

Euronet has claimed that because Roberto López was not a signatory to the SPA, their claims against him are not subject to arbitration. The very case law cited by Euronet disproves this contention.

Eurnonet claims that Waldron v. Goddess, 93 A.D.2d 706 (1st Dept. 1983) and Lorber Indus. of Cal. v. Los Angeles Printworks Corp., 803 F.2d 523 (9th Cir. 1986) stand for the proposition that only a party to an agreement can compel arbitration. Plft's Opp. at 5. This is wrong. In Waldron, the court held that a real estate broker whose contract (which contained an arbitration clause) had expired could compel arbitration against another real estate broker with an unexpired contract which contained a similar arbitration clause.[1] In Lorber, the Court based its denial of a motion to compel arbitration on a finding that there was no evidence that the non-signatory party seeking to compel arbitration was acting as an agent to a party to the arbitration agreement. Lorber, 803 F.2d at 525 ("Neither section supports Mark Fabrics' assertion that it is an agent of Timely Trends as pertain to the Lorber contract.").

Conversely, in the instant action, Euronet has affirmatively alleged that Mr. López was acting as an agent for Mr. Hernández. Compl. at ¶ 8 ("Defendant Roberto Lopez served as an agent for Jose Andres Hernandez Andujar . . . during the negotiations for the SPA"). Euronet cites no case in which a court found that an agent of a party who was subject to an arbitration clause could not compel arbitration of claims based on the agreement and asserted by a signatory to the agreement. To the contrary, Euronet's citations hold that in such a situations agents can compel arbitration of claims made against them. See Thomson-CSF v. American Arbitration

---

[1] While Euornet fails to note this point for the Court, its citation to Waldron is actually taken from the language of the *dissent* in that case. See Waldron, 93 A.D. at 708-709 (containing the dissent to the court's holding).

**2083921.1**                                    6

Association, 64 F.3d 773, 777 (2d Cir. 1995) ("Traditional principles of agency law may bind a nonsignatory to an arbitration agreement)[2]; Wilson v. Waverlee Homes, Inc., 954 F. Supp. 1530, 1535 (M.D. Ala. 1997) (citing "Arnold v. Arnold Corp., 920 F.2d 1269, 1281 (6th Cir. 1990) (nonsignatory defendant, as agent of signatory defendant, may compel arbitration)")[3]. Thus, Euronet's own authorities demonstrate, that because Euronet alleges that Mr. López was acting as an agent for Mr. Hernández, the claims against him, like those against the other Defendants must be referred to arbitration.

Euronet's contention, that its allegations against Mr. López are not inextricably intertwined with those asserted against the other Defendants because they sound in tort rather than in contract, is likewise baseless. First, Euronet has asserted tort claims against Mr. Hernández, but has not claimed that those tort claims are not subject to arbitration because they are tort based. Second, Euronet cites no authority in support of this argument. See Plft's Opp at 7 (citing no authority for this statement). In fact, simply cite-checking the Lorber case, on which Euronet relies, debunks any such notion. In Silkworm Screen Printers, Inc. v. Abrams, No. 91-1631, 1992 WL 317187 * 6 (4th Cir. Nov. 4, 1992), the court held that an individual (who was not a signatory to the agreement) but who acted as an agent for a company which was a party to an arbitration agreement could compel arbitration of tort claims:

> Abrams acted as an agent of the seller. Moreover, his conduct is inseparable from the conduct of Chen and Eastern Commodities. Abrams and his company, Genco, are proper parties to the arbitration. [Citations omitted].

---

[2] Thomson is cited on page 7 of Euronet's Opposition brief.

[3] Wilson is cited on page 6 of Euronet's Opposition Brief.

Id.  The claims at issue in Silkworm included "actual and constructive fraud [and] negligent misrepresentation."  Id. at 1.  Like Euronet, Silkworm also tried to argue that tort claims should not be subject to arbitration.  This contention was soundly rejected.

> We cannot accept Silkworm's argument that any order enforcing arbitration should be limited to the breach of contract claim and that it should exclude the tort claims.  All of the facts giving rise to the dispute between the parties arose from the same commercial transaction.  The arbitration clause that Eastern Commodities seeks to incorporate into the purchase agreement provides for arbitration of '[a]ll disputes arising from the execution of, or in connection with this contract.'  Doubts about the scope of arbitrable issues should be resolved in favor of arbitration.  This precept brings within the scope of such a broad arbitration clause both breach of contract and the torts that Silkworm alleged. (Citations omitted.
> Id. at 4.

All of Euronet's claims against Mr. López derive from the SPA and would have no existence absent the SPA.  As such, these claims rely upon the terms of the SPA and are inextricably interwoven with Euronet's claims against the other Defendants.[4]  Again, Euronet's own authority states that these types of claims must be referred to arbitration.  Francisco v. Stolt-Nielsen, No. CIV. A 02-2231, 2002 WL 31697700, *5 (E.D. La. Dec. 3, 2002) ("[E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory . . . .  Second, application of equitable estoppel is warranted when the signatory to the contract

---

[4] For example, based on Euronet's own allegations, Mr. López was acting as an agent for Mr. Hernández in the SPA negotiations.  See Compl. at ¶ 8.  Euronet also claimed that the supposed conspiracy between Mr. Hernández and Mr. López was a "Material Adverse Effect" (see Compl. at ¶ 43) under the contract, entitling Euronet to rescission and damages.  Euronet further claimed that it was fraudulently induced to enter the SPA because of false statements made by Mr. López.  See Compl. at ¶¶ 46-48.  Euronet's conspiracy claim consists of allegations that Mr. López, together with Mr. Hernández were conspiring to strip business from the defendant corporations after the SPA's closing for their financial benefit and misrepresented to Euronet that post closing of the SPA business would continue as in the past.  See Compl. at ¶ 46.  These conspiracy and misrepresentation claims against Mr. López are an integral part of every count of Euronet's complaint, (see e.g., Compl. at ¶¶ 57, 66-67, 77, 84, 92-94, 97-99), and cannot be separated from their claims against the other Defendants.

containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.").[5] Thus, Euronet's claims against Mr. López must also be referred to arbitration.

**II.     Conclusion**

For the reasons described above, Defendants respectfully request that the Court grant Defendants' Motion for Stay to Enforce Arbitration Provision.

        RESPECTFULLY SUBMITTED.

        Dated: June 19, 2007.

/s/ Travis L. Salmon
RUSSELL S. JONES, JR.     KS Fed. #70214
TRAVIS L. SALMON          KS      #20606
Shughart Thomson & Kilroy, P.C.
120 W. 12th Street
Kansas City, Missouri  64104
rjones@stklaw.com
tsalmon@stklaw.com
telephone: 816-421-3355
facsimile: 816-374-0509

*Attorneys for Defendants*
*Envios de Valores La Nacional Corp., Envios de Valores La Nacional, Inc., AeroCaribe Travel Agency, Inc., José Andres Hernández Andujar, Candida De Hernández and Roberto López*

Of Counsel:
G. Lee Garrett, Jr.
GA # 286519
L. Christine Lawson
GA# 440404
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309

---

[5] Francisco is cited on page 6 of Euronet's Opposition brief.

Telephone: (404) 521-3939
Fax: (404) 581-8330

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of June, 2007, I have electronically filed the foregoing Defendants' Reply to Euronet's Brief in Opposition to Defendants' Motion for Stay to Enforce Arbitration Provision with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to the following counsel of record:

>William M. Modrcin
>wmodrcin@stinson.com
>George F. Verschelden
>gverscheldon@stinson.com
>Stinson Morrison Hecker LLP
>1201 Walnut Street
>Kansas City, Missouri 64106

I HEREBY CERTIFY that I have also served the following non electronic filing users by United States mail, with adequate postage attached thereto, addressed as follows:

>Thomas S. Kilbane
>Howard J.C. Nicols
>Colin R. Jennings
>Squire, Sanders & Dempsey L.L.P
>4900 Key Tower
>127 Public Square
>Cleveland, Ohio 44114

>/s/ Travis L. Salmon
>RUSSELL S. JONES, JR.    KS Fed. #70214
>TRAVIS L. SALMON    KS    #20606
>Shugart, Thomson & Kilroy, P.C.
>120 W. 12th Street
>Kansas City, MO 64105
>rjones@stklaw.com
>tsalmon@stklaw.com
>Telephone: (816) 421 3355
>Fax: (816) 374 0509
>
>An Attorney for the Defendants