THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | ) | |
|---|---|---|
| EURONET PAYMENTS & REMITTANCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-2216 |
| | ) | |
| v. | ) | |
| | ) | |
| ENVIOS DE VALORES LA NACIONAL CORP., | ) | |
| ENVIOS DE VALORES LA NACIONAL, INC., | ) | |
| AEROCARIBE TRAVEL AGENCY, INC., | ) | |
| JOSE ANDRES HERNANDEZ ANDUJAR, | ) | |
| CANDIDA DE HERNANDEZ, AND | ) | |
| ROBERTO LOPEZ, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

**EURONET'S REPLY IN SUPPORT
OF ITS MOTION TO STAY ARBITRATION AND
MOTION TO CONDUCT DISCOVERY PRIOR
TO THE RULE 26(f) CONFERENCE**
_____

## I. Introduction

The evidence of fraud is overwhelming, and the argument that such fraud was not "pled with particularity" demonstrates the futility of Defendants' arguments. The bottom line is that the January 12, 2007 Stock Purchase Agreement ("SPA") is governed by New York law (a fact previously admitted to by Defendants[1]), the requisite prima facia showing has been made, and therefore this Court should order discovery and an evidentiary hearing pursuant to the governing New York law.

---

[1] *See* Defendants' Memorandum of Law in Support of Motion for Stay to Enforce Arbitration Provision (Docket Entry No. 8, hereinafter "Defendants' Motion"), at 2 ("the SPA's forum selection clause states that the contract is to be governed by New York law, and thus New York principles of contract interpretation must be applied"). *See also* Defendants' April 30, 2007 Notice of Arbitration Demand ("As you are also aware, the SPA is governed by New York Law"), attached as Exhibit 2 to Defendants' Motion.

The facts supporting the order for discovery and an evidentiary hearing include the false representations of unqualified fact that none of La Nacional's employees or agents were the subject of any governmental investigation and all operations were completely lawful. *See* SPA at §§ 2.13 and 2.14. Each of these representations were made in the SPA and signed by Defendants. *See Id.* These unqualified factual representations, made in an effort to fraudulently increase the perceived value of the companies under consideration for acquisition, are demonstrably false:

- From July 2005 through June 2006, La Nacional was the recipient of five (5) Grand Jury or DEA subpoenas related to the activities at La Nacional stores and by La Nacional agents. La Nacional was clearly on notice that its operations and agents were under investigation.

- On February 6, 2007, two La Nacional employees were arrested and charged with money laundering and search warrants were executed by state and federal authorities at two La Nacional stores and at least four locations operated by La Nacional agents. *See* Amended Petition at ¶¶ 26-27.

- The arrested La Nacional employees had been actively involved in the laundering of proceeds from illegal drug trafficking and transmitting funds to Columbia. *See Id.*

Additionally, La Nacional falsely and expressly represented that none of its employees had ever been charged, indicted or convicted of any money laundering offense. *See* SPA at § 2.13.2. This unqualified factual representation was offered to fraudulently increase the perceived value of the companies under consideration for acquisition, and is again demonstrably false:

- La Nacional failed to disclose that its General Manager of Sales, Ramon Corporan, is a convicted felon, having been convicted of conspiracy to commit money laundering on or about July 31, 1998, for which he served more than four years in federal prison. *See* Amended Petition at ¶¶ 30-32.

- On March 6, 2007, La Nacional admitted Corporan's conviction and that he was knowingly hired by La Nacional despite the conviction. *See* Defendants' March 6, 2007 letter (without exhibits), attached hereto as Exhibit 1 at 3.[2]

- La Nacional also failed to disclose the hiring of a convicted felon in a key upper management role to its state regulators. *See* Amended Petition at ¶¶ 36-37.

- The failure to disclose the employment of a convicted felon in a money transmitter business constitutes a violation of various state regulatory laws, including the laws of Delaware, Rhode Island, and Florida, resulting in possible sanctions, up to and including debarment. *See Id.* at ¶ 36.

- In their March 6, 2007 letter, Defendants admitted that Delaware required disclosure of Corporan's criminal record and that they failed to make the required disclosure. *See* Exhibit 1 attached hereto. *See also* Defendants' Memorandum in Opposition at 17 (Docket Entry No. 23).

- The discovery that La Nacional had a convicted felon in a key upper management role led Euronet to further discover that La Nacional had failed to disclose that several other key upper management personnel at La Nacional were associated with Remesas America Oriental ("RAO"). *See* Amended Petition at ¶ 35.

- RAO was the money remitter previously owned by Defendant Roberto Lopez that employed Corporan at the time of his felony conviction for money laundering, and which was separately convicted and closed for laundering $4.4 million to, among other places, the Dominican Republic. *See* Amended Petition at ¶¶ 33-34.

- By hiring these individuals in upper management level positions, La Nacional, in effect, re-created the convicted and closed RAO money laundering enterprise within La Nactional. *See* Amended Petition at ¶ 35.

The false representations made to inflate artificially the value of the businesses were coupled with the false representations as to the value of those businesses in the future:

- During the course of the SPA negotiations, La Nacional represented, by and through Defendants Jose Hernandez and Roberto Lopez, that the La Nacional financial

---

[2] Euronet first learned of Corporan's conviction while gathering information relating to the execution of the search warrants and arrests of La Nacional employees. *See* Amended Petition at ¶ 30. Defendants' argument that they are somehow absolved from their fraudulent conduct because the personnel files of its employees were available to Euronet is absurd. The terms of the SPA did not require Euronet to dig through every La Nacional employee personnel file to assure itself that the company did not employ convicted felons. Euronet was entitled under New York law to rely on the truthfulness and accuracy of La Nactional's representations. *CBS, Inc. v. Ziff-Davis Publishing Co*, 75 N.Y. 2d 496, 503 (N.Y. 1990) (where, as here, express warranties are bargained-for contractual terms, the purchaser is buying the truth of representations provided and no showing of reliance is required to demonstrate breach).

projections and estimates were both accurate and conservative, and that the employees and agents would remain loyal to La Nacional. *See* Amended Petition at ¶¶ 46-47

- As a result of the concealed "business-stripping conspiracy," these representations were false and Defendants knew them to be false at the time they were made. *See Id.* at ¶¶ 42-48.

After making false misrepresentations to increase the perceived value of these companies, now and into the future, Defendants Jose Hernandez and Roberto Lopez specifically concealed their efforts to strip business away from La Nacional post-closing - - both by omission and commission:

- Defendants failed to disclose or provide the contract with Mateo Express as required by the terms of the SPA. *See Id*. at ¶ 50.

- The failure to disclose this contract was in furtherance of Defendants' fraudulent scheme because Mateo Express was the entity into which Defendants Jose Hernandez and Roberto Lopez (in concert with others) intended to divert La Nacional's business post-closing. *See Id*. at ¶ 42.

- Only upon Euronet's specific request for the contract (after learning of the business-stripping conspiracy) did La Nacional provide a copy of the contract. *See* Exhibit 1 at 5.

- Upon independent investigation, Euronet has further discovered that Clara Hernandez, sister to Defendant Jose Hernandez (Chairman of the Board of La Nacional) is the owner of Mateo Express. La Nactional has refused to provide the ownership information for Mateo Express despite specific request. *See* Exhibit 1 at 5-6.

- Mateo Express has recently gone through a "reorganization" and is now operating under the direction and ownership of Clara Hernandez. La Nacional failed to disclose the familial relationship between the companies - - even after Euronet specifically requested the undisclosed contract with Mateo Express. *See* Exhibit 1 at 5-6.

- La Nacional failed to disclose that Defendants Jose Hernandez and Roberto Lopez conspired between themselves and with others to cause certain of La Nacional's key sales employees and agents to divert their La Nacional business to another entity - - Mateo Express, owned and operated by the sister of Defendant Hernandez, Clara Hernandez - - post-closing. *See* Amended Petition at ¶¶ 42-47. The Agents are the source of approximately 70% of the anticipated revenues of La Nacional.

Based on the foregoing, Euronet has made a prima facia showing of fraud permeating the agreement.[3] This is all that is required at this stage of the proceedings, and having done so, as a matter of New York law, Euronet is entitled to discovery and an evidentiary hearing. Defendants attempt to conflate pleading standards ("particularity") with evidentiary standards ("clear and convincing evidence"). Only after discovery (and as part of the evidentiary hearing) must Euronet demonstrate that fraud permeates the SPA by clear and convincing evidence to invalidate the agreement as a whole (and thereby the arbitration provision at issue). As a matter of New York law, the validity of the agreement as a whole must be determined by this Court.

Accordingly, Plaintiff's Motion to Stay Arbitration should be granted. Under New York law, Euronet is entitled to discovery and an evidentiary hearing on the issue of whether fraud so permeates the SPA to invalidate the agreement (and the relied on arbitration provision). In order to put forth the evidentiary record, Euronet requests the Court allow a period of at least ninety (90) days (due to the international scope of the necessary discovery) to conduct discovery in support of this motion.

## II. Argument

### A.   Under *Volt*, New York Arbitration Law Applies Pursuant to the SPA's Clear and Unambiguous "Choice-of-Law" Provision.

Defendants' contention that the United States Supreme Court decision in *Volt Information Sciences, Inc. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989), has been limited in its application is incorrect. Putting aside the issue of how a New York state court can "limit" a decision of the United States Supreme Court, the case law and authority relied

---

[3] *See also* Euronet's Motion to Stay Arbitration (Docket Entry Nos. 5 & 6), which briefing is incorporated herein by reference.

on by Defendants' in support of this assertion does not even mention *Volt*, let alone limit it any way.

In *Volt*, the U.S. Supreme Court, interpreting a choice-of-law provision that provided that "the Contract shall be governed by the law of the place where the Project is located," held that "[w]here, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, <u>even if the result is that arbitration is stayed where the [FAA] would otherwise permit it to go forward</u>." *Volt*, 489 U.S. at 470, 479 (emphasis added). Accordingly, New York law controls the issue before this Court (*i.e.*, whether fraud "permeate[s]" the SPA) because the choice-of-law provision in the SPA unambiguously and unequivocally states that the SPA will be governed by and interpreted in accordance with New York law, without regard to principles of conflict of laws. *Id.* at 479.

Defendants expressly conceded that New York law was controlling when they issued the April 30, 2007 Notice of Arbitration Demand pursuant New York statutory law. *See* Exhibit 2 to Defendants' Motion for Stay (Docket Entry No. 8). Defendants may not now disavow New York law when it no longer suits their purposes. New York law controls and Euronet is entitled to discovery and an evidentiary hearing to demonstrate that fraud "permeate[s]" the SPA.

In any event, the Defendants' argument that a choice-of-law provision must contain language that New York law will govern the agreement and "its enforcement" is not applicable here.[4] Fraud was not at issue in any of the cases cited by Defendants. Here, Euronet

---

[4] The cases cited by Defendants address procedural challenges to arbitrability where the validity of the arbitration agreement is not in dispute, including "whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met…" *See Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp.*, 4 N.Y.3d 247, 252 (2005) (citations omitted); *See also Nomura Securities Int'l v. CIBC World Markets Corp.*, 798 N.Y.S.2d 879, 883 (N.Y. S.Ct. 2005) ("[Due to] the absence of an express choice-of-law provision that New York law governs the enforcement of the agreement to arbitrate, petitioner has failed to overcome the presumption that the arbitrator is to determine the timeliness issue") (emphasis added). This law does

substantively challenges the validity of the SPA as a whole - - this is not an issue of "arbitrability" of a particular dispute or whether there are procedural impediments to the demanded arbitration. Instead, the issue before this Court is whether, under New York law, fraud so permeated the SPA that it (and thereby the relied on arbitration provision) is invalid. The threshold determination of the validity of the SPA is to be made by this Court pursuant to *Volt* under New York law.

### B. New York Law Requires This Court to Conduct an Evidentiary Hearing to Determine Whether the SPA is Invalid.

Defendants' contention that the SPA itself reserves issues of arbitrability for the arbitrator is equally without merit. Prior to determining the issue of arbitrability (*i.e.* whether Euronet's claims fall within the scope of the arbitration provision), New York law requires this Court to first make the threshold determination of whether the SPA is invalid. *See Barrett Intercommunication Prods. Corp. v. Entron, Inc.*, 41 A.D.2d 567 (2nd Dept. 1973) (holding that where, as here, an allegation of fraud raises a "substantial question as to the existence of a valid agreement to arbitrate which . . . would warrant a stay of arbitration . . ., a hearing is required at which the parties are to be afforded the opportunity to present evidence and examine and cross-examine witnesses"). *See also* CPLR 7503(a) (New York statute requiring an evidentiary hearing on arbitrability where substantial issues exist).

Defendants concede this principle in their response to Euronet's Motion to Stay. *See* Defendants' Memorandum in Opposition, page 9 ("A court decides only whether there is a substantial issue as to any of these threshold questions regarding the agreement to arbitrate."). Euronet is therefore entitled to discovery and an evidentiary hearing to show that, under New York law, Defendants' fraud so "permeated" the SPA that both the agreement and its arbitration

---

not extend to substantive challenges to the validity of the agreement as a whole (i.e., "fraud permeates the agreement").

clause are invalid and unenforceable. *See Kennelly v. Mobius Realty Holdings LLC*, 33 A.D.3d 380, 383 (1st Dept. 2006); *Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 799 (2nd Dept. 1985); *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972). Upon completion of discovery and the evidentiary hearing, this Court can (and must) make the threshold determination as to the validity of the SPA as required by New York law.

> **C. Under New York Law, Euronet's Burden at This Threshold Stage is to Make a Prima Facie Showing that an Issue Exists as to Whether Defendants' Fraud "Permeate[s]" the SPA.**

Defendants are also incorrect in their assertion that Euronet's burden at this point is to present "clear and convincing evidence" that the SPA is "permeated" with fraud.[5] This is simply not the law. The issue before the court is whether a sufficient showing has been made to warrant discovery and an evidentiary hearing on the issue of whether the agreement is invalidated due to fraud. Under New York law, Euronet's burden at this stage is merely to make a prima facie showing that an issue exists as to whether Defendants' fraud "permeate[s]" the SPA. *See Kennelly v. Mobius Realty Holdings LLC*, 33 A.D.3d 380, 383 (1st Dept. 2006); *Oberlander v. Fine Care, Inc.*, 108 A.D.2d 798, 799 (2nd Dept. 1985); *Housekeeper v. Lourie*, 39 A.D.2d 280, 285 (1st Dept. 1972). It is at the evidentiary hearing where Euronet's burden rises to "clear and convincing" evidence.

---

[5] The principle authority relied on by Defendants is a trial-level case that does not address a request for an evidentiary hearing to support an allegation that fraud "permeate[s]" the agreement. *See Shmulevich v. Bederoff*, Case No. 23188/04, 2007 N.Y. Misc. LEXIS 345 (Kings Cty. Feb. 13, 2007). In fact, the discussion of "clear and convincing" evidence is mere dicta as the court was not presented with a claim of fraud in the inducement:

> In addition, even if there were a claim of fraud in the inducement in the within matter (which there was not), since there is no clear and convincing proof of permeation with fraud (in the agreement) such as would invalidate the entire agreement, the matter (i.e. issues of fraud [in conduct] and misappropriation) must proceed to arbitration.

*Id*. at *4.
    Therefore, the authority relied on by Defendants in support of this erroneous assertion of the law should be disregarded by this Court.

**D.     Euronet's Motion for Leave to Conduct Discovery Prior to the Rule 26(f) Conference Should be Granted.**

Defendants argue that Euronet's Motion to Conduct Discovery Prior to the Rule 26(f) Conference should be denied because this matter should be stayed for arbitration. However, as demonstrated here and in Euronet's previously filed Motion to Stay Arbitration, Euronet is entitled under New York law to fraud-related discovery and an evidentiary hearing to demonstrate that Defendants' fraud so "permeate[s]" the SPA, rendering the agreement and its arbitration provision unenforceable. Moreover, this Court, under the "good cause" test developed by the federal courts, should use its broad discretion under Rule 26 to order expedited discovery prior to the Rule 26(f) conference because (1) the discovery will be limited to the issue of whether Defendants' fraud "permeate[s]" the SPA, (2) discovery is needed to prepare for the evidentiary hearing Euronet is entitled to under New York law, (3) the international scope of the discovery makes it imperative that the process begin as soon as possible, (4) in furtherance of Rule 1 of the Federal Rules of Civil Procedure, expedited discovery would avoid unnecessary delay in adjudication of Euronet's claims and the waste of judicial resources, and (5) defendants would not be unduly burdened. Therefore, Euronet's pending motion for leave to conduct discovery should be granted.

### III. Conclusion

Based on the foregoing, Euronet's Motion to Stay Arbitration should be granted pending an evidentiary hearing for the purpose of showing fraud "permeate[s]" the entire SPA. Pursuant to New York law, based on the particularized allegations in the Amended Petition, Euronet is entitled to an evidentiary hearing on the issue of whether fraud so "permeate[s]" the SPA to invalidate the arbitration provision. In order to put forth the evidentiary record, Euronet requests the Court allow a period of at least ninety (90) days (due to the international scope of the necessary discovery) to conduct discovery in support of this motion.

Respectfully submitted,

  /s/ George F. Verschelden
William M. Modrcin  KS #13020
George F. Verschelden  KS #21469
Stinson Morrison Hecker LLP
1201 Walnut Street
Kansas City, Missouri 64106
(816) 842-8600
FAX (816) 691-3495

Thomas S. Kilbane (OH # 0005938 – *pro hac vice*)
Howard J.C. Nicols (OH # 0007493 – *pro hac vice*)
Colin R. Jennings (OH # 0068704 – *pro hac vice*)
SQUIRE, SANDERS & DEMPSEY L.L.P.
4900 Key Tower
127 Public Square
Cleveland, Ohio  44114
Telephone: (216) 479-8500
Facsimile: (216) 479-8795

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

A copy of the foregoing Plaintiff's Reply Brief in Support of Motion to Stay Arbitration and Motion to Conduct Discovery Prior to the Rule 26(f) Conference was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

   /s/ George F. Verschelden   
One of the Attorneys for Plaintiff
